UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| EMPLOYEE PAINTERS' TRUST, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>MCINTOSH MIRROR DOOR & GLASS INC, et al.,<br><br>Defendants. | CASE NO. C13-0108JLR<br><br>ORDER ON MOTION TO DISMISS |

Before the court is Defendant David James McIntosh's Motion to Dismiss. (Mot. (Dkt. # 15).) Mr. McIntosh moves to dismiss the complaint in this case pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that it does not present a plausible claim for relief under the standards set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp v. Twombly*, 550 U.S. 544 (2007). Mr. McIntosh's arguments for dismissal are straightforward and also somewhat cursory—he merely asserts that the claims against him are not pleaded with enough factual specificity that they should be

ORDER- 1

allowed to proceed to discovery. (*See* Mot.) The court has examined the complaint and concludes that 12(b)(6) dismissal is not appropriate at this time. In a perfect world, perhaps the claims against Mr. McIntosh would be pleaded with more detail and specificity. However, the court concludes that the complaint contains sufficient factual matter to state a plausible claim relief under the standards set forth in *Iqbal* and *Twombly*. For this reason, and for the reasons stated below, the court DENIES Mr. McIntosh's motion to dismiss (Dkt. # 15).

## I.   BACKGROUND

This is an action to recover money that should have been set aside to pay for employee benefits but was not. It involves the glass industry. The plaintiffs are a collection of trust funds, trade unions, and employer associations related to the glass industry. (Compl. (Dkt. # 1) ¶ 2.) Defendants are a group of persons and entities involved in a particular glass business called glazing. (*Id.* ¶¶ 9-14.) Defendants have agreed to abide by the terms of collective bargaining agreements that require them to contribute funds into trust on a monthly basis to cover the cost of employee benefits. (*Id.* ¶ 22.) Defendants have also agreed to submit monthly reports to the trusts and to permit Plaintiffs to conduct audits of their payroll and related business records to determine the amount of their required contributions. (*Id.* ¶ 23.)

Plaintiffs, the trust funds and related entities, brought this action to recover past-due contributions from Defendants. Plaintiffs allege that Defendants have not been paying their monthly benefit contributions (*id.* ¶¶ 25, 35-36), and further that Defendants have not been submitting the required monthly reports. (*Id.* ¶¶ 26.) As a result, they

allege that the amount of their past-due contributions is not known at this time. (*Id.* ¶ 35.) Plaintiffs assert causes of action for breach of contract, injunctive relief, personal liability, breach of fiduciary duty, unjust enrichment, and "demand for relief on bonds." (*Id.* ¶¶ 37-63.) In response, Defendant Mr. McIntosh filed this motion to dismiss Plaintiffs' claims against him pursuant to Federal Rule of Civil Procedure 12(b)(6). (*See* Mot.)

## II.   ANALYSIS

### A.   Legal Standard on a Motion to Dismiss under Rule 12(b)(6)

A rule 12(b)(6) motion challenges the sufficiency of pleadings and asserts that a complaint does not plead a claim upon which relief can be granted. Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. Pro. 8(a)(2). The purpose of this rule is to "'give the defendant fair notice of what . . . the claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

To analyze a Rule 12(b)(6) motion, courts apply the standards set forth in *Twombly* and *Iqbal*. *See Twombly*, 550 U.S. at 562-63; *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Under the *Twombly*/*Iqbal* standard, it is not enough that a claim to relief be merely "possible" or "conceivable." Instead, it must be "plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim for relief is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

(quoting *Twombly*, 550 U.S. at 556).  This standard is "not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  To cross the threshold from conceivable to plausible, a complaint must contain a sufficient quantum of "factual matter" alleged with a sufficient level of specificity to raise entitlement to relief above the speculative level.  *Twombly*, 550 U.S. at 555.

In determining whether to grant a Rule 12(b)(6) motion, the court must accept as true all "well-pleaded factual allegations" in the complaint.  *Iqbal*, 556 U.S. at 679.  However, the court is not bound to accept as true labels, conclusions, formulaic recitations of the elements, or legal conclusions couched as factual allegations.  *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  As the Supreme Court said in *Iqbal*, a complaint must do more than tender "'naked assertions' devoid of 'further factual enhancement.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

**B.     Dismissal under Rule 12(b)(6) is not appropriate in this case**

Mr. McIntosh argues that Plaintiffs' claims are not "plausible" under the *Twombly/Iqbal* standard.  Specifically, he argues that "Plaintiff's Complaint fails to state a claim for personal liability and/or breach of fiduciary duty under the Supreme Court's threshold requirements because its allegations are so bereft of factual content that the Court cannot draw any inferences, let alone a reasonable one, that David committed any . . . acts giving rise to such claims."  (Mot. at 8.)  His argument is based primarily on the fact that he was granted a bankruptcy discharge on February 24, 2012, discharging

him in his personal capacity for liabilities prior to that date.  He argues that the complaint does not allege post-discharge obligations or conduct with enough specificity to state a claim that he is personally liable.

The court concludes otherwise.  To state a plausible claim, a plaintiff need only plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).  A complaint states a plausible claim if it contains a sufficient quantum of "factual matter" alleged with a sufficient level of specificity to raise entitlement to relief above the speculative level.  *Twombly*, 550 U.S. at 555.  This standard is met here with respect to post-discharge claims.  Based on the factual matter pleaded in Plaintiffs' complaint, the court can easily draw a reasonable inference that Mr. McIntosh is liable for the conduct alleged and that Plaintiffs' entitlement to relief rises above the speculative level.  *See id.*

To understand why, it is necessary to examine the complaint in some detail.  The complaint is structured in such a way that Plaintiffs' entitlement to relief may not be immediately apparent to all who read it.  First, Plaintiffs allege that Defendants generally, including Mr. McIntosh and the glazing business he ran, failed to make pre-discharge contributions and were therefore subject to liability for those contributions.  (*See* Compl. ¶¶ 1-27.)  Plaintiffs allege these claims with substantial detail and particularity, setting forth, among other things, the basis for the contribution obligations, the amount of the contribution shortfalls, the time periods in which those shortfalls occurred, and the fact

that the NLRB issued a decision finding Defendants liable for these contribution shortfalls. (*Id.* ¶¶ 19-27.)

Second, Plaintiffs allege, with particularity, facts that if proven would establish a non-speculative claim that Mr. McIntosh is personally liable for the contribution shortfalls. (*Id.* ¶¶ 6-17.) Plaintiffs allege that Mr. McIntosh is/was an owner, officer, decision maker, and ERISA fiduciary relating to payment of contributions to the trusts. (*Id.* ¶ 17.) Further, they allege that he and the other Defendants in this case are essentially one entity working to achieve a common objective. (*Id.*) They allege that Mr. McIntosh founded and owned Defendant corporation McIntosh Mirror, Door & Glass, Inc. ("MMD&G"), and that this company ceased operating in 2011 and became Tom McIntosh Glass and Glazing, LLC ("TMG&G"). (*Id.* ¶¶ 6, 8-9, 11-17, 29-33.) The new company inherited the business of the old company and occupied the same physical location as the old company. (*Id.*) In addition, the new company was run by Defendant Thomas Daniel McIntosh, Mr. McIntosh's brother, who also was an officer, owner, and decision maker of the old company:

> Although MMD&G and TMG&G were formed as separate business entities, the two entities have operated as one entity known as McIntosh Glass, Inc., under the control of [Mr. McIntosh], [Thomas McIntosh], and [their father] . . . [all of whom] were and/or are owners, officers and decision makers of MMD&G and TMG&G and ERISA Fiduciaries relating to the payment of contributions to the trust.

(*Id.* ¶¶ 16-17.) Plaintiffs allege in some detail that all Defendants in this case are effectively the same and that the transfer from one to another is "a mere technical change intended to avoid the obligations of the CBA and Trust Agreements." (Compl. ¶ 30.)

ORDER- 6

This may or may not be true, and the court does not make any pronouncements at this time with respect to whether Mr. McIntosh is personally liable for the conduct alleged in the complaint or whether, in fact, MMD&G and TMG&G are one and the same. However, the facts alleged, taken as true, give rise to a reasonable inference that Defendants are all intimately connected and that Mr. McIntosh may be personally liable for the acts of the other Defendants. (*Id.* ¶ 52 ("At all times material herein, [Defendants] became personally bound and liable for MMD&G and TMG&G's delinquencies to the Trusts, pursuant to the Trust Agreements and the CBA.").)

Finally, Plaintiffs allege that the same course of conduct that was occurring before the bankruptcy discharge also occurred after the discharge. Plaintiffs acknowledge that "[t]o the extent that any portion of the claims asserted herein have been discharged through David's bankruptcy proceeding, the claims will not be pursued by the Trust Funds and are not intended to be part of this proceeding." (*Id.* at 10 n.1.) But they allege that Mr. McIntosh continues to be an owner, officer, decision maker, and ERISA fiduciary of the active companies named in this litigation (*id.* ¶ 17), and that Defendants continue to be bound to make contributions to the trusts (*id.* ¶ 21). They also allege that Defendants have made no contributions to the trusts since August 2011 (*id.* ¶ 26), but that the exact amount of its contribution shortfalls are unknown at this time because Defendants have stopped submitting the reports that Plaintiffs would use to determine that amount (*Id.* ¶ 35).

Taken as a whole, these three sets of allegations establish a claim for relief against Mr. McIntosh that is plausible on its face. To summarize: Plaintiffs allege pre-discharge

contribution shortfalls with specificity and detail, allege that Mr. McIntosh may be personally liable for those shortfalls, and allege that all conduct that occurred before the discharge continues to occur after the discharge. This is enough factual content to allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged," *see Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556), and to raise Plaintiffs' entitlement to relief above the speculative level. *See Twombly*, 550 U.S. at 555.

### III.   CONCLUSION

For the foregoing reasons, the court DENIES Mr. McIntosh's motion to dismiss (Dkt. # 15).

Dated this 13th day of June, 2013.

JAMES L. ROBART
United States District Judge